McKinney, J.
delivered the opinion of the court.
It appears from the record in this case, that in January, 1844, F. L. McDaniel as principal, and the complainants, Williams and Wynne, as his sureties, made a note for two hundred and twelve dollars, payable to David Johnson, *499 which the latter assigned to the defendant Wright. Suit was brought upon said note in the Circuit Court of Sumner, against all the parties, and judgment was obtained thereon on the 17th day of June, 1845, for two hundred and nineteen dollars and ninety-five cents, exclusive of costs. On the 21st day of July, 1845, execution issued upon said judgment, and on the 8th day of October thereafter was levied upon a slave, the property of the defendant, McDaniel. At the time of the levy, McDaniel executed a bond for the delivery of said slave on the day of sale, with Fleming Cocke as surety, which bond was forfeited by the non-delivery of the slave.
On the 22d day of December, 1845, an alias execution was issued upon said judgment against all the original defendants, and also against Fleming Cocke as surety in the forfeited delivery bond. This execution, without being levied, was returned to the office by the sheriff, with the following endorsement thereon, made by the present defendant Wright, viz:—
“ I agree to stay the collection of the fi. fa., February 2nd, 1846. William Weight.”
After the lapse of more than two years, viz, on the 22d day of March, 1848, another execution was issued upon said judgment, against all the last mentioned parties, which was levied upon a slave, the property and family servant of the complainant Williams. And this bill is brought to enjoin the sale of said slave, and also to obtain -a perpetual injunction, restraining the defendant Wright from proceeding to enforce the collection of said judgment as against the complainants, upon the ground that they are discharged from all liability thereon.
They allege in the bill, that they did not join in the delivery bond, and had nothing to do with the execution *500 thereof; that the slave of McDaniel levied upon was of value more than sufficient to have satisfied the judgment; and regarding themselves as discharged from all liability by said levy and execution of the delivery bond, they paid no further attention to the matter. They further allege, that the agreement of the defendant to suspend^ the alias execution, was without their knowledge or consent, and that time was given McDaniel, upon an agreement between him and the defendant, that the former should pay to the latter at the rate of ten per cent, interest for the delay. And upon the foregoing grounds the complainants insist that they are discharged from liability upon said judgment.
The defendant, in his answer, denies the agreement stated in the bill, and says, that he assented to the return of the alias execution unsatisfied, as a matter of accommodation to Johnson, one of the defendants therein : that such assent was not given upon any consideration whatever, and that there was no stipulation for any definite suspension of execution... He further states, as a reason why no other step was taken to enforce collection of said judgment before the early part of 1848, his absence in Mexico, during a great part of the time, and the refusal of the sheriff to discharge his duty.
We think it very clear that upon the ground of delay, were the facts charged in the bill admitted to be true, the complainants are entitled to no r'elief. There was no valid agreement for any definite delay; no consideration ; nothing to have precluded the defendant, Wright, from taking out another execution at pleasure, at any subsequent time, and much less to have, in the slightest degree, interfered with the complainants, as sureties, to have availed themselves of the ample and summary remedies *501 given by our law for tbeir indemnity against their princi-pa]. And if the principle of equitable relief, insisted upen in this case, be at all applicable to the relation of principal and surety, after judgment, which to say the least is extremely questionable, it will perhaps be found indispensably necessary that the surety should allege in his bill some reasonable ground for his failure to pursue the legal remedy afforded him by statute.
The remaining ground of relief is, that the levy upon the slave of McDaniel and the execution and forfeiture of the delivery bond given by him to the sheriff, operated in law as a satisfaction of the original judgment, and consequently as a discharge of the liability of the complainants thereon, and in support of this proposition, we are refered to previous adjudications of this court.
Upon a careful examination of the act of 1831, chap. 25, we are not prepared to hold, that the levy of an execution upon personal property of one of several joint defendants in a judgment, and the taking a delivery bond with security from such defendant, by the sheriff, which is forfeited, will operate as a satisfaction of the judgment, or discharge the liability of such of the defendants as may not have joined in the delivery bond. We incline to the opinion, that by the proper construction of the act of 1831, such -will not be the legal effect.
But were the law admitted to be otherwise, as insisted upon by the complainants’ counsel, it is very clear that such discharge would constitute matter of pure legal defence, of which a court of equity would not entertain jurisdiction, unless there existed in the case some other independent ground of equitable relief. Such is not the case under consideration. The complainants, from the face of the bill, had an ample and unembarrassed remedy *502 at law, in the court where the execution issued, by super-sedeas and motion to quash, a remedy much more simple, direct, and summary, and less onerous to the parties, than that of which they have attempted to avail themselves in this case, if there existed a concurrent jurisdiction in equity, which is not admitted. The nature of the property cannot affect the question of jurisdiction in the present case. It is true that it has grown into a settled principle of our equity jurisprudence, that a court of chancery will interpose to preserve the relation of master and slave, and to protect the possession and right of the former in this peculiar property, where the title is clear and indisputable. But this is only as against trespasses, as where it is attempted to subject the slave of one person to levy and sale as the property of another.
This jurisdiction is exercised, upon the principle, that owing to the nature of the property, a recovery in damages in an action at law, would, in many cases, be no adequate remedy.
But the levy, in this case, upon the slave of the complainant Williams was no trespass. He was a party to the judgment, and his property of every description, subject to execution, was liable to be seized for its satisfaction. If, for any valid reason, the execution itself was either void or voidable, the appropriate remedy was in the court whence it issued, in the mode before indicated. And upon this ground we affirm the decree of the Chancellor, dismissing the bill.